The next case is number 21-1739, Janet Vazquez-Velazquez et al. versus the Puerto Rico Highway and Transportation Authority et al. At this time, would counsel for the appellants please introduce himself on the record to begin? May it please the court, my name is John Mudd and I represent the appellants in this case. I would like to reserve two minutes for rebuttal. Yes, you may. Thank you, Your Honor. Your Honor, I would like to start with the deprivation of the contractual clause of the Constitution. First thing we have to determine is, was there a contract? Since 2000, the year 2000, and this is one of the stipulations in the case, there was a scheme or a procedure in the HDA to pay my clients or people who were doing the same type of work extra money, extra compensation for the work they were doing. Then in 2011, Regulation 02-017 was put into effect. Article 1 of that regulation explains why the regulation is in effect, because of the special work that my clients did. Now, what is a property interest contract? Well, it's determined by state law. What is in Puerto Rico? Counsel, if I might. Yes. When did they actually stop paying the group that you represent? Yes, Your Honor. For the period that was going to end in October of 2014, that's when the bulletin, the special bulletin was enacted. So at that point, October 2014, the HDA decided not to pay them for the extra work they were doing. Okay, going forward from the date of the publication, they said we're no longer going to pay you, but they did pay everything up to that point? No, Your Honor. Again, the period that would end, it ends in September, July, August, September, when my clients went to present their bills or the procedure that was in the Regulation 02-017, they were told, no, no, no, we can't take that because we made the bulletin, so you guys are not going to get paid for that. So there is claims of before the bulletin was put into effect and after the bulletin was put into effect. So three months before and after? And after, correct. Those are the monetary claims and, you know, others. Okay, going back, Puerto Rican law. Well, Puerto Rican law establishes the obligations, and in Puerto Rican law, an obligation is not the same as a contract. Obligation is, whatever happened, you have an obligation, you have to do or not do something. There's obligations are created by contracts, quasi-contracts, implied contracts, custom, which is why we started in the year 2000. There was a custom of paying my clients for that. So all these things create an obligation, a contractual obligation. So there you have the contract. Second issue, is the impairment substantial? Well, I point out... I think you skipped over an issue. Which one, Your Honor? Well, let's assume there was a contract. Yes. And let's assume that the agency had agreed that it would pay X, and your clients did three months of work on that understanding, and then the agency at the end says, we're not going to pay X. Yes. So then, as I understand your argument, you would say, there was a contract to pay X. After the fact, they then said they're not going to pay X. That sounds, in normal settings, like a pretty blatant breach of contract. Correct. So why isn't that precisely what it is, is a breach of contract by the agency? Well, that's precisely the argument that we were making. It was a breach of contract, but... So you have a claim under Puerto Rican law for breach of contract. There was claims under Puerto Rican law for extra-contractual obligation. But more than... It's more than a breach of contract. It is actually an impairment of the contractual obligation. At the counsel... Yes. This is a sort of... Why are you trying to constitutionalize a claim that appears to be a perfectly valid claim under Puerto Rico law for breach of contract? Well, Your Honor... You don't need to constitutionalize it to have a breach of contract claim. I agree with the court. But, number one, I didn't write the complaint. Counsel was hired to deal with this much after that, number one. Number two, the fact that there was a breach of contract does not preclude that there also a constitutional claim. Well, it does. You're not going to get that... Go ahead, Judge Lynch. The remedy under Puerto Rico law, I would think, would be to pay your actual damages for work already performed. How does constitutionalizing the claim get your clients any more than that? Well, Your Honor, there is also the... In terms of real terms, to answer your question, we have also the possibility of attorney's fees, which are not available in the state court remedies. But you don't even have... If you have a right to enforce the contract and recover monetary damages, then the contract has not been impaired. It's been breached. But a breach of contract is not an impairment under the Constitution. A breach of contract happens every day. In fact, the party can intentionally breach a contract and opt to pay damages instead. Yes, Your Honor. Where's the impairment if you still have a right to a breach of contract for at least those three months? Because there is no... Under the regulation, there is no right to go for a breach of contract. Under, I'm sorry, the bulletin. And the regulation, O2-017. Well, the bulletin just announces under... If we accept your theory that there was a contract and that at least as to the three months there was a breach of that contract, the bulletin then under that theory would simply be an announcement by the agency that it was going to breach the contract. It'd be great evidence for you in a breach of contract action. Well, Your Honor, it is a little bit... The agency is using its powers to regulate some arrangement between two private parties and say a contract that they had is no longer enforceable. This is an agency modifying its own manual of dealing with its employees, its own contracts. Its own contracts, yes, Your Honor. And it announced to the world it's going to breach one. Okay, Your Honor. In this case, it's not particularly that. They were saying because of Law 66, we're suspending O2-017. Isn't it your position that Law 66 by no means requires them to do what they do? Exactly, Your Honor. So there you go. You still get your contract claim. We could, but we also have this claim. Okay. Only if your contract is impaired. Excuse me? Judge Thompson? Okay, sorry. I think Judge Lynch might have had something to say. Is there federal jurisdiction here if what you have is an ordinary breach of contract claim? Well, it's a complicated question because there is also the dismissal of the state court claims in this case, Your Honor. Yes, that's right. In terms of federal jurisdiction, no. However, we argue that the case... And under Puerto Rican law, you say that there's no provision for attorney's fees and therefore you have a strong interest in making this a federal claim under 1983 so that attorney's fees can be obtained. That's one of the reasons. This is about... Well, one of the reasons. One of the reasons, yes. Seems to be the only real reason. Well, Your Honor, I recognize that the First Circuit has never really supported what I'm going to say, but also when we're dealing with... And I've been a lawyer in Puerto Rico for 40 years. When we're dealing with government agencies, it's always best to go to federal court because the state court judges are very, very, very, very, very lenient towards the government. And as I said, I recognize that this court has never really accepted that argument. That's true. We haven't. And yes, we're well aware of your many years of practice before this court from Puerto Rico. Did you make a jury trial claim in this case? Yes, Your Honor, I was made. Okay, that's the other reason, right? Yes, also. You want to be in federal court. Okay. Now, Your Honor, we made the argument as to Law 66 not being applicable. And I think even the district court understood that Law 66 was not applicable to the case. But if it's not applicable, the special bulletin had no reason to be enacted. And I go directly in my brief to sections because the special bulletin states that they're going to... They're enacting sections 9, 10, 11, and 17 of Law 66. But when you look at them, the first two are inapplicable to the issue of the contract. Section 11 specifically states in its title, increase of economic benefit or special monetary compensation. And section 8 states, as of the effective date and during the effectiveness of this act, the economic benefits or special monetary compensations granted to the employees of entities of the executive branch shall not be increased. Sure, no problem. But here, it was taken away from them. We interrupted you at the beginning when you were arguing that there was a contract here. And our questions assumed there was indeed with respect to the three months that preceded that were retroactively applied. Was there, with respect to forward going potential bonuses, was there a contract with respect to those? And if the court will allow me, I shy away from the word bonus because this is not a bonus. But whatever you call it, was there a contract that bound the agency to continue paying forever these added payments? Not forever, Your Honor. Only while these employees were doing this special work. So for as long as they did that work, the special payments were bound forever? Until they retired, of course. Well, were they obligated, once they were put on notice that they wouldn't get paid for the special work, were they obligated to continue to perform special work? No, Your Honor. And in answer to that, some of the plaintiffs here left the program. Very few of them. Most of the plaintiffs remained because this case was going on and still is theoretically going on. So that's the reason why. What will happen if, for example, the court says, Mr. Mudd, I'm sorry. You're not right. I don't know. I suppose it sounds... I don't think you're quite answering the question. Did the agency require that the people continue to do this special work for which they previously had been given this extra compensation? No, Your Honor. As I said, some of my clients, some of the plaintiffs here, actually left the program. So there was no compulsion, no requirement that they stay. But doesn't that undercut your argument that the work that they actually performed was necessary in order to carry out the agency's obligations under the federal contract? No, Your Honor. Because, as I said, most of these people continue doing their work because of this case was going on. In addition... That makes it nice, not necessary. In addition, there are some contracts of the agency in which the work that these employees are doing is done by private contractors. Is there any other question? I believe there are none. Thank you. I believe I'm over my time. Thank you. Thank you, counsel. At this time, would counsel for the appellees please introduce himself on the record to begin? Good morning, Your Honor. My name is Emanuele Fierro Soto, and I represent the Puerto Rico Highway Transportation Authority. Your Honor, the first thing that we would like to argue is or counter-argue what Mr. Mudd said about Section 11A of Act 66. Now, Mr. Mudd is basing his argument on an inaccurate translation of Act 66. Act 66 was drafted in Spanish and was enacted in Spanish. And what the actual article or Section 11A states is that it eliminates two types of compensation. One compensation is called increase of economic benefits, and the other is called special monetary compensations. And we can actually find two types of or actually evidence in two parts of the Act that support this argument. The first one is that Section 11B specifically defines. Are you actually arguing that the Commonwealth law here mandated that your client not pay amounts retroactively due under its agreement with the plaintiffs? I am arguing that, Your Honor. Sounds like you're arguing there's an impairment of contract here. No, well, specifically Act 66 on Section 31. You seem to be missing the point. We're not at interpreting Act 66, all right? These people did the work under a regime where they were told they would be compensated. Then you announced they wouldn't be compensated, but you didn't pay them apparently for three months. Is it accurate from your client's point of view that they were not paid during this period before your new regulation became effective? Well, there's no new regulation here, Your Honor. It's just that... You answer the question, were they paid or were they not paid? I'm sorry, Your Honor. They were not paid, and they were not paid because Act 66 specifically states that it is implemented from July 1st, 2014 onwards. Not only that, Section 31 of Act 66 specifically states that retroactive payments of these types of monetary compensations that are not given cannot be retroactively paid. Not only that, there's no credit even when Act 66 is left without effect. What was the effective date of Act 66 when to the public? July 1st, 2014. Okay, and they had done work up to July 1, 2014 for which they were not paid? They were paid their salaries. They were not paid the amounts under the regulation because the regulation was left without effect. Weren't they told before they did that work that if they did the work, they would get these additional amounts? The work that they were doing, Your Honor, is part of their regular jobs. Yes, but weren't they told they would get extra amounts? Not until the informative bulletin, no, Your Honor. No, weren't they told prior to the informative bulletin? They were not. They were told with the informative bulletin that they were not being paid. Before the informative bulletin came out, the one that is alleged to be the breach or the impairment, wasn't there an understanding and or practice that they would be paid these additional amounts if they did their jobs? Yes, in a quarterly fashion, yes, Your Honor. Okay, and your client did not comply with that understanding? It did not comply based on Act 66. So did you have an obligation prior to the passage of the statute to make those payments? Yes, but I believe that the payments that were not furnished were the ones after July 1st, 2014. I might be missing something, but you're making a very strong argument that there was an impairment of contract here. With regard to an impairment of contract, that is not constitutionally elevated, Your Honor. Well, why not? You're saying that there was this agreement, there was a contract to pay them for at least these three months, and then a log up passed which precluded your client from making those payments. No, I was making the argument assuming that there was a contract. Our standpoint, and we've briefed on this and we can argue it here, is that there's no contract. Okay, but if there is no contract, the whole case goes away. But if there is a contract, haven't you now made the precise argument that someone would need to make to establish that there was an impairment? In other words, that its nonperformance was mandated by the law rather than simply a breach? We don't think so, Your Honor. But even if there was an impairment, we need to go into the other tests of the contract clauses, whether or not it was justified as necessary and reasonable. Sure. And obviously, here... I'm sorry. Let's take that in two parts. It's a different argument going forward that it's justified by the needs to reduce the public payroll in light of Puerto Rico's fiscal crisis. But is there a different argument being made as to not paying people for work that they had already done? Your Honor, the only thing that we're saying here is that Act 66 precluded that payment. It actually stopped that payment from July 1st onward. And that's what the agency did here. It did not pay... They had done work for which they would have been paid up to July 1. They were paid their regular salaries that were not paid under the regulation. No, Your Honor. So for a quarter, because of how the payment system worked, they worked and then they reported and they got paid the extra payment retroactively. What is the commonwealth's justification for not having paid for the work that they understood they would be paid for? The justification, Your Honor, is that since the enactment of Law 66, they were prohibited for giving that payment. But that law just said no more increases. That law, in the inaccurate translation... It is the official translation, but it is an inaccurate translation. Will we work with the official translation? Otherwise, we'd be left with who knows what. Well, Your Honor, I will make the argument that even in the inaccurate translation... By that, you mean the official translation? The official inaccurate translation, but it is the official translation. Did you take any steps to get this translation corrected? No, Your Honor, we did not. You might assume that we're going to use the official translation then? Yes. No, no, and I completely understand... What language in that required you to stop paying payments that you had already agreed to pay? I'm sorry, Your Honor, can you re-say the question? What language in the official translation mandated your client to not pay amounts that it had previously agreed to pay and that had been earned and the work done? That will be Section 31 of Act 66. In what language? In English language and the Spanish language, both. No, I mean, what text? What words? Well, what it says is that it prohibits the retroactive... Since the enactment of the law, it prohibits the retroactive payment of those... That's not its language. Well, no, I don't have it in front of me, Your Honor. But that's what you're saying forced your client to not make these payments? Yes. But you don't know what the text says? I don't have it in front of me. I don't have it in front of me. But what Section 31 basically states, or I'm not quoting it, but is that these payments cannot be retroactively paid, nor there is a credit for them once Act 66 is left without effect. Now, with regards to the legislative intent, with regards to whether or not it prohibits an increase in these benefits, or it prohibits those two benefits, one of them named Increase of Economic Benefits and the other not one named Special Monetary Compensation, we can go to Appendix 1953 and 1954, where in the Statement of the Motives, it states that special monetary compensations are prohibited. It uses the term interchangeably with special economic benefits. And then there's, in 1953, it states that increase of economic benefits are hereby. In interpreting commonwealth statutes, isn't it the law that we would ordinarily opt for interpretations that avoid constitutional questions? Yes, Your Honor. Yes, Your Honor. And I think that's another thing that we would like to state here is the fact that with regards to the contract clause, there is no legislative action being questioned here. In fact, the employees have specifically stated that they're not questioning Act 66. They're only questioning the informative bulletin, which would be an executive action. And that would be outside of the purview of the contract clause, just as a judicial action is outside of the contract clause. With regards to the due process claim, the employees claim here that they have a contractual right over the regulation. But there's no, they don't cite to any cases that state that that's automatically raised to a constitutionally protected interest. And in fact, I don't think a jury could have reasonably found that just because of the way that the compensation operated. We had a compensation that was contingent on evaluation of the employees. There was an uncertainty of the amounts being paid. Actually, it could go all the way down to zero if they got a bad evaluation. And there's also an absence of specific assurances regarding the benefits. And not only that, they don't go, you know, with regards to what process was due, if there was a process due. I think that a process would have been an idle endeavor just because the performance of these employees was not the reason why the informed metropolitan was implemented. And not only that, Act 66 provided recourse for the employees on Section 14. It states that they could have gone to the Public Service Appellate Commission in order to dispute any claim with regards to the implementation of Act 66. And they failed to avail themselves of that recourse. If we disagree with your interpretation of the Commonwealth law and read it as simply prohibiting further increases, then in a breach of contract action with respect to the three months where the work was already done, would your client have any defense? Well, Your Honor, with regards to a breach of contract, the only defense that we could pass on it with regards to the Commonwealth law. I'm sorry. Was this a concession on your part that there was a contract? No, Your Honor. It's just based on the hypothetical that there was a contract here, which we believe that there is not a contract. And we have to go to what the Supreme Court has stated with regards to contracts. It says that it's required. No, no, no. I believe, oh, you're saying whether there's a contract is not to be defined by Puerto Rico law? Is that the argument? Can you restate the question? Sorry, Your Honor. You were about to tell us that the definition of a contract is purely a matter of federal law. I had understood that we define contract and contractual obligations by reference to local law, in this case, Puerto Rican law. What are you saying? I was not about to make that argument, Your Honor. And I'm sorry if it came out that way. What I was going to say is that the creation of a contract with regards to a state, the Supreme Court has stated that it needs to be unmistakably clear. And I think here, there's, you know, the employees have not passed that threshold just because the regulation itself, the language of the regulation doesn't provide for a contractual commitment for the PRHCA that they will never change. It doesn't say that it will never change the regulation. We're not talking about future. You make a good point that your client didn't obligate itself to never change this. But under Puerto Rican law, if I say to you, if you do this work for the next three months, I'll pay you your regular salary plus a 10 percent bonus. OK? And you say, OK, and do the work. Don't we have a contract that I have to pay you the regular work plus 10 percent? Yes, Your Honor. OK. And isn't that exactly what happened here? Well, what happened? At least for those three months. Well, what happened here, Your Honor, is that the regulation, you know, the act itself left the regulation without effect. It wasn't. Now, forget about that. Forget about the Commonwealth law. Yeah. OK? Because my hypothetical presumes we interpret that differently than you're arguing. If we ignore that law, wouldn't we have a contract here for at least those three months? We might have, Your Honor. Yeah. I know my time is up, but if I may, with regards to the tort claim. I'll give you an extra minute. Yeah, just with the tort claim, Your Honor. Here, the lower court declined to exercise supplemental jurisdiction. They have broad discretion to do that. But even if this court were to say that that was an error and that we need to look at this motion for summary judgment de novo, there's a severe lack of proof with regards to any tort action being claimed here. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellant reintroduce himself on the record? He has a two-minute rebuttal. May it please the court. John Mudd for the appellant. A couple of things, Your Honor. The translation was a stipulated translation of law 66. Not only that, but counsel for HTA is the one who filed it with the court. Number one, it is not July 1st. It's June 17th, because Article 35 of the law, of law 66, establishes that once it is enacted, it becomes into effect. OK. They argue the bulletin is not a regulation. Well, regulation 02-017 is a regulation. In order to put out of effect a regulation under Puerto Rican law, you have to make another regulation. Now, they say, and they claim that in page 19 of their brief, that they're only announcing what law 66 requires. Since law 66 does not require that, it makes no sense. Statute of limitations for contracts violation, Your Honor, is 15 years under the old Puerto Rican law, which is the code at that time. Under the new code, you use the old law if the cause of action was born under the old code. It's 15 years. We go to dismissal. Normally, it happens all the time. But here, we don't have a dismissal in judgment for pleadings or in motion to dismiss. We have it once we had pretrial, once we had jury instructions, once we had all those procedures. And also, Your Honor, in order for us to do anything in state court, we have to go to the procedure of Title III, which is we have to go to the board. And I just point out to the court what happened when this appeal was brought up. The court quite correctly said, hey, I don't think we can because you don't have lifting of the state. You can just look at how long it took. And this was in agreement with the board and the HTA for the lifting of the state. But it takes time. And also, in addition, the filing. If the court has no further questions. Thank you. Thank you. That concludes argument in this case. Thank you, counsel.